**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                                                                         **13-CR-159(S)**

        -v-

**DANIEL JUDE WITEK,**
                **Defendant.**
_____

## REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report on dispositive motions. Text Order of Referral July 23, 2013.

## PRELIMINARY STATEMENT

        The defendant, Daniel Jude Witek ("the defendant"), is charged in a one-count Indictment with having violated Title 18, United States Code, Sections 1341 and 2 (mail fraud). Dkt. #9. Defendant Witek filed a motion to suppress his statements made to law enforcement following his arrest. Dkt. ##35 and 38. This Court held an evidentiary hearing on August 5, 2014. The transcript of the evidentiary hearing was filed on November 13, 2014. Dkt. #45. All references to the hearing transcript herein will be to "T" and the corresponding page number(s). Immediately following the filing of the hearing transcript, counsel for parties jointly sought and this Court granted an extension of time to file post-hearing memoranda. Dkt. ##46-47. In addition, counsel for the parties each filed motions seeking additional disclosures relative to the relief

sought in the suppression motion. Dkt. ##50, 55. In a previously filed Decision and Order (Dkt. #73), this Court denied the defendant's motion to produce and granted the government's motion to compel. However, prior to this Court's Decision and Order on the post-hearing discovery motions, counsel for defendant filed a motion to withdraw as counsel (Dkt. #65) which this Court granted on April 7, 2015. Thereafter, new counsel was appointed to represent the defendant on that same date. Counsel for the parties filed their post-hearing memoranda of law on May 13, 2015 (Dkt. #70) and May 14, 2015 (Dkt. #71). What follows is this Court's Report, Recommendation and Order with respect to the defendant's motion to suppress.

## **FACTS**

On May 24, 2013, Special Agents of the Federal Bureau of Investigation ("FBI") executed an arrest warrant for defendant Daniel Jude Witek and a search warrant for his residence located at 333 Linwood Avenue. T, at pp.4-6. FBI Special Agent Vanessa Paris testified during the evidentiary hearing that law enforcement had a key to the residence (apartment), so there was no need to breach the door of the residence. T, at p.6. Following standard FBI protocol for officer safety, Special Agent Paris testified that the agents upon entry had their weapons drawn. *Id.* Immediately after law enforcement made entry into the apartment, agents encountered the defendant who was handcuffed and was thereafter, turned over to Special Agent Paris in the hallway. T, at p.7. Also present in the residence at the time entry was made was the defendant's mother. *Id.* Special Agent Paris testified that at no time did she observe any law enforcement officer use any kind of physical force on the defendant or

his mother. T, at p.8. Special Agent Paris further testified that after defendant Witek was turned over to her, she and other law enforcement officers inquired whether he would be able to walk to their vehicle. *Id*. In response, defendant Witek stated that he needed his cane, one of the agents retrieved his cane and he was escorted to Secret Service Special Agent John Ferris' vehicle and transported to the Buffalo Division of the FBI. *Id*.

      Prior to escorting the defendant to the vehicle and before they departed the apartment, Special Agent Paris testified that she advised defendant Witek that there was both an arrest warrant for him and a search warrant for the apartment. T, at p.9. Special Agent Paris testified that she did not ask defendant Witek any questions with respect to the charges alleged in the Criminal Complaint when she placed him under arrest. *Id*. Once defendant Witek was in the vehicle, Special Agent Paris provided him with a copy of the arrest warrant and verbally advised him of his *Miranda* warnings and asked him if he wished to speak to law enforcement. T, at p.10. Specifically, Special Agent Paris testified that she read the defendant his *Miranda* warnings verbatim from an Advice of Rights Form FD 495 (Government Exhibit 2). T, at pp.12-13. Indeed, Special Agent Paris testified that she read each warning to the defendant and asked if he understood each warning separately and he acknowledged that he understood each warning. T, at p.14.

      Special Agent Paris testified that she did not begin to ask the defendant questions on the approximately 10-15 minute car ride from 333 Linwood Avenue to the

3

Buffalo Office of the FBI. T, at pp.14-15. Rather, Special Agent Paris stated that the defendant's demeanor was "very cordial and polite. I know the conversation was pleasant. We just had regular chit chat on the way down, talking about where we grew up and things like that." T, at p.15. According to Special Agent Paris, once they arrived at the FBI, defendant Witek was escorted to an interview room in a separate building in close proximity to the parking lot to minimize the distance defendant Witek needed to walk. *Id.* At no time between the time Special Agent Paris encountered defendant Witek at 333 Linwood Avenue and the time they arrived at the FBI, did defendant Witek ever request to speak with an attorney or indicate in any way that he didn't want to speak to law enforcement. T, at p.16.

Once seated in the interview room, Special Agent Paris testified that she once again advised defendant Witek of his *Miranda* warnings. Indeed, she testified that she provided him with a copy of the Advice of Rights Form FD 395 and requested that he initial next to each right to acknowledge that he understood them and then he agreed to waive his rights and sign the form. T, at p.18; see also Government Exhibit 2. Special Agent Paris testified that she recalled that after the defendant was advised of his *Miranda* warnings at the FBI office, defendant Witek requested that the interview be recorded. T, at p.24. Special Agent Paris testified that she advised him that recording was not available. *Id.* Because recording was not available, Special Agent Paris testified that she offered to give defendant Witek paper and a pen to make a written statement and he declined. T, at p.25. When asked to describe the conduct of the interview, Special Agent Paris testified that, "a lot of what Mr. Witek said was

4

unprompted, so he began telling us about his relationship with Cynthia Vaness and other things without us questioning him, so a lot of times it was follow up questions. And during the interview, on occasion if we asked him a direct question, he wouldn't answer the direct question and would talk about other matters." T, at p.27. Finally, Special Agent Paris testified that the interview concluded when defendant Witek requested an attorney. *Id.* at p.26.

In addition to the testimony of Special Agent Paris, the government also offered the testimony of Special Agent John Ferris at the evidentiary hearing. T, at pp. 77-106. Special Agent Ferris testified that he was part of the team of 10-12 law enforcement officers that made entry into defendant Witek's apartment. T, at p.80. Special Agent Ferris further testified that as he was towards the back of the entry team, by the time he made entry into the apartment, the rooms had been cleared and the defendant was in handcuffs. *Id.* at p.81. Special Agent Ferris testified that when he made entry his weapon was drawn, but that it was re-holstered within 8-10 seconds of his entry into the apartment. *Id.* Thereafter, Special Agent Ferris testified that the defendant's mother was taken into the hallway and given a chair and that as part of the arrest team, Special Agent Ferris prepared to transport defendant Witek to the FBI. *Id.* at pp.84-85. With respect to the treatment and handling of defendant Witek and his mother, Special Agent Ferris testified that at no time did he see anyone throw the defendant's mother to the floor, ever see anyone mishandle or mistreat the defendant's mother or see anyone mistreat the defendant. *Id.* at p.86.

During the approximate 10-15 minute drive from 333 Linwood Avenue to the FBI Office in downtown Buffalo, Special Agent Ferris testified that Special Agent Paris verbally provided the defendant with his *Miranda* warnings. T, at p.91. Once they arrived at the FBI Office, Special Agent Ferris testified that be observed the defendant initial next to each line on the Advice of Rights Form and sign the waiver at the bottom of the form which says, "I've read this statement of my rights. I understand what my rights are. At this time I'm willing to answer questions without a lawyer present." T, at p.96. Further, Special Agent Ferris testified that at no time did either Special Agent Ferris or Special Agent Paris physically touch or threaten the defendant. *Id.*

Prior to the defendant beginning to give his statement, defendant Witek requested that his statement be recorded. Special Agent Ferris testified that in response to this request, defendant Witek was told that conversations were not recorded, that they were not capable of recording the conversation. T, at p.97. The only alternative offered to the defendant was that he could give a written statement. *Id.* According to Special Agent Ferris, defendant Witek declined to provide a written statement and indicated that he would only say so much without the conversation being recorded. *Id.* at p.98. Almost immediately after advising the agents that his statements would be limited because they would not be recorded, Special Agent Ferris testified that defendant Witek just began speaking without being prompted by questions from the agents. *Id.* at p.99. Special Agent Ferris indicated that he and Special Agent Paris conducted the interview as a back and forth conversation and asked follow up questions to defendant Witek's statements. *Id.* at p.100. Finally, Special Agent Ferris testified

6

that near the end of the interview, New York State Police Investigator Caicedo came into the interview room. According to Special Agent Ferris, Investigator Caicedo used a much louder voice, stood while defendant Witek remained seated and used a more aggressive approach toward defendant Witek. T, at p.103. Although he was raising his voice and got close to the defendant's personal space, Special Agent Ferris testified that Investigator Caicedo never put his hands on the defendant or threatened him in any way. *Id*. At that time, Special Agent Ferris testified that the defendant did request an attorney and all questioning stopped. T, at p.99.

In support of his motion to suppress, defendant Witek claims in his affidavit that after he requested that the interview be recorded, Special Agent Paris said she would obtain some sort of recording device and left the room. Dkt. #38-1, ¶11. Defendant Witek further explained in his affidavit,

> 12. The agent returned and advised that she could not find anything to use to record the interrogation and she then indicated that the only way she could do this was to record it using her cell phone. She appeared to push some buttons on it and placed it on the table in front of us.
>
> 13. Believing that the interrogation was thus being recorded, I agreed to answer further questions.
>
> 14. If I had known that no recording was being made as I was led to believe, I never would have answered any more of the agents' questions.

Dkt. #38, ¶¶12-14. In addition to his affidavit filed in support of the motion, defendant Witek also testified during the evidentiary hearing. T, at pp.131-197. During the evidentiary hearing, defendant Witek testified that Special Agent Paris did not read him his Miranda warnings in the car on the way to the Buffalo FBI Office. T, at p.151.

7

However, defendant Witek did later testify that Special Agent Paris did read him his *Miranda* warnings after they arrived at the Buffalo FBI Office and that he initialed and signed the waiver form. T, at p.153. Immediately thereafter, defendant Witek testified that he requested that the interrogation be recorded. *Id.* According to defendant Witek, Special Agent Paris then left the interview room purportedly to find a device to record the interrogation. Once Special Agent Paris returned to the interview room, defendant Witek described the events as follows,

> She said that she couldn't find anything to do it with, which made me more nervous, and she said she guessed, I mean, she could use her telephone. And she proceeded to take out what looked to me like a new model smart phone, she had it in her hand, she pushed some buttons on the screen, and then she placed the telephone, not just by where she was sitting, but sort of in the middle of the table, so it would be triangulated between the three of us, and I believed we were being recorded.

T, at p.155. Moreover, defendant Witek testified that because Special Agent Paris led him to believe that the conversation was being recorded, that was the reason he agreed to speak to law enforcement. *Id.* at p.156.

## **DISCUSSION AND ANALYSIS**

In *Miranda*, the United States Supreme Court created a procedural mechanism with the purpose of establishing a prophylactic safeguard that would protect a defendant from the coercive nature of custodial interrogation and preserve his Fifth Amendment privilege against self-incrimination. However, before the requirements of *Miranda* come into play, there must be a form of "custody" of the person to be interrogated which "custody" amounts to the deprivation of "freedom of action in any

8

significant way." *Miranda v.* Arizona, 384 U.S. 436, 444 (1966); *Thompson v. Keohane*, 516 U.S. 99, 100-101 (1995); *Tankleff v. Senkowski*, 135 F.3d 235, 242 (2d Cir. 1998); *United States v. Newton*, 369 F.3d 659 (2d Cir. 2004). The defendant bears the burden of proving custody. *See United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984). Here, there is no dispute that the defendant was in custody at the time the statements were made. By his motion, the defendant maintains that he conditioned his waiver of his rights under *Miranda* on the recording of his statements to law enforcement and what defendant Witek characterizes as the misleading and deceptive behavior of Special Agent Paris in placing her cell phone on the table to give the appearance that the conversation was being recorded. As set forth below, this assertion is belied by the unequivocal and unambiguous testimony offered by the government at the evidentiary hearing.

In order to be admissible, a confession must be free and voluntary. *Bram v. United States*, 168 U.S. 532, 542 (1897). A confession is voluntary when it is not "extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however, slight, nor by the exertion of any improper influence." *Id.* at p.542-43. "Voluntariness is a question of fact to be determined from all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49 (1973). "Where the voluntariness of a statement is challenged, the government bears the burden of establishing by a preponderance of the evidence that the defendant's statements were 'truly the product of free choice.'" *Colorado v. Connelly*, 479 U.S. 157, 1168-69 (1986). As the Second Circuit has previously stated,

9

> > the test of voluntariness [of a confession] is whether an examination of all the circumstances discloses that the conduct of "law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . ." *Rogers v. Richmond*, 365 U.S. 534, 544, 81 S. Ct. 735, 741, 5 L.Ed.2d 760 (1961).
>
> *United States v. Mast*, 735 F.2d 745, 749 (2d Cir. 1984) (citations omitted). There are various factors to be considered in making a determination of voluntariness - they include the type and length of questioning, the defendant's physical and mental capabilities, and the government's method of interrogation. *Id.*

*United States v. Okwumabua*, 828 F.2d 950, 952-53 (2d Cir. 1987).

The testimony of Special Agent Paris and Special Agent Ferris is uncontradicted on the issue of whether Special Agent Paris had properly advised the defendant of his rights after placing him under arrest, and the defendant having voluntarily made statements against his interests after having been so advised. The advice of rights given as testified by SA Paris was full and complete and met the requirement of *Miranda v. Arizona*, 384 U.S. 436 (1966). According to SA Paris, the defendant acknowledged that he understood these rights. Indeed, the defendant does not attempt to argue that he was not advised of his rights or that he did not waive those rights. Rather, it is the defendant's assertion that his waiver of those rights was conditioned on the recording of his statements and the alleged conduct of Special Agent Paris in allegedly placing her cell phone on the interview room table to mislead the defendant into believing that his statements were being recorded. The testimony offered by the government at the evidentiary hearing was unequivocal, defendant Witek

was advised that an audio recording of the conversation was not possible and further, that the only means available was for him to provide a written statement, which he declined. Once he declines to provide a handwritten statement, the defendant began his conversation with Special Agents Paris and Ferris. After observing their testimony and demeanor during the evidentiary hearing, I find both Special Agent Paris and Special Agent Ferris to be credible witnesses and, therefore, have no reason to discredit their testimony on the voluntariness and validity of the statements made to them by the defendant after having been advised of his rights. On the contrary, I also observed the demeanor and heard the testimony of the defendant during his testimony at the evidentiary hearing and do not find his testimony to be credible. There is no basis in the facts to support the defendant's assertion that Special Agent Paris ever placed her cellular telephone on the table or that such conduct, if it occurred, could reasonably lead the defendant to conclude that the conversation was being recorded after Special Agents Paris and Ferris both testified that the defendant was advised that recording was not available and that the only option was a handwritten statement. Therefore, this Court recommends that defendant's motion to suppress these statements should be denied.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Decision and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Decision and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Decision and Order in accordance with Fed. R. Crim. P. 59(a).

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(1) of the Local Rules for the Western District of New York, written objections shall specifically identify the portions of the Decision and Order to which the party objects and the basis for such objection, and shall be supported by legal authority. **Failure to comply with the provisions of Local Rule 59(b)(1), may result in the District Judge's refusal to consider the objection.**

In accordance with the requirements set forth in Local Rule 59(b)(3), "[a]ny party filing objections to a Magistrate Judge's order or recommended disposition must include with the objections to the District Judge a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new

12

arguments and explaining why they were not raised to the Magistrate Judge." **Failure to comply with the provisions of Local Rule 59(b)(3), may result in the District Judge's refusal to consider the objection.**

Dated:   Buffalo, New York
         September 8, 2015

                                        *s/ H. Kenneth Schroeder. Jr.*
                                        **H. Kenneth Schroeder, Jr.**
                                        **United States Magistrate Judge**