**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                                                                    **13-CR-159(S)**

             **-v-**

**DANIEL JUDE WITEK,**
                          **Defendant.**
_____


## REPORT, RECOMMENDATION AND ORDER

             This case was referred to the undersigned by the Hon. William M. Skretny,

in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report

on dispositive motions. Text Order of Referral July 23, 2013.


## PRELIMINARY STATEMENT

             The defendant, Daniel Jude Witek, a/k/a Daniel Mountbatten-Witek, a/k/a

Walter Payne, ("the defendant"), has filed a motion seeking suppression of certain

evidence seized pursuant to two separate search warrants dated May 23 and May 24,

2013 issued by this Court.  Dkt. #90.  The government has filed its opposition to this

motion.  Dkt. #93.


             Since this Court previously conducted an extensive evidentiary hearing on

the defendant's motion to suppress statements made by him to law enforcement

officials and filed a Report, Recommendation and Order relative to such hearing

(Dkt. #81), which was accepted by the District Court over the objections of the defendant (Dkt. #92), the present motion of the defendant can be decided without a hearing.

## FACTS[1]

On or around May 13, 2013, an individual using the name "Walter Payne" contacted an individual by the name of David Hanes, who owned David Hanes Autographs, for the purpose of selling some historical documents to him.  Hanes advised "Walter Payne" that he was not interested but recommended that "Payne" contact David Lowenherz, President of Lion Heart Autographs in New York City, or Stuart Lutz of Stuart Lutz Historic Documents in Short Hills, New Jersey.  13-MJ-64, Dkt. #1, Affidavit of S.A. Paris, ¶ 4.

On or about May 13, 2013, an individual using the name "Walter Payne" contacted David Lowenherz, President of Lion Heart Autographs located in New York City, and represented that "he had certain items to sell Lowenherz" consisting of "numerous historical letters/postcards written to Anson Conger Goodyear and others." "Payne" subsequently faxed numerous copies of these letters and postcards to Lowenherz on telephone number 716-884-3070 which belongs to the Best Western hotel located at 510 Delaware Avenue in Buffalo, New York.  Lowenherz responded to "Payne" by calling him at 716-228-4242 and "agreed to purchase five of the letters/postcards from 'Payne' for $2750.00" which "Payne" had represented had been "passed down to him from his family."  On May 18, 2013, using a Fed Ex Overnight

---

[1] The facts are taken from the filings herein as well as the testimony obtained during the evidentiary hearing conducted by this Court on August 5, 2014.

Service, "Payne" sent "four original letters and one postcard along with photocopies of additional letters" to Lowenherz with a covering letter wherein "Payne" requested that Lowenherz "deposit the payment for the letters directly into a Bank of America account in the name of J.W. Payne."  13-MJ-64, Dkt. #1, Affidavit of S.A. Paris, ¶ 4.  The return address on the Fed Ex box was "J.W. Payne, 716-228-4242, 3842 Harlem Rd., STE 406, Buffalo, NY 14215."  13-MJ-64, Dkt. #1, Affidavit of S.A. Paris, ¶ 10.

On May 21, 2013, Lowenherz emailed the Director of Library and Archives of the Buffalo History Museum ("the Museum") "with a compiled list of approximately forty-two letters/postcards "Payne" offered to sell to [him] in order to ensure the origin of communications were legitimate."  As a result, an inventory review was conducted by the Museum staff of the A. Conger Goodyear Papers Collection ("Goodyear Collection") and it was "discovered that over thirty of the forty-two listed letters/postcards were missing from the Goodyear Collection belonging to the Museum which prompted the Museum officials to contact law enforcement.  Dkt. #1, Affidavit of S.A. Paris, ¶ 5.

It was established through the Executive Director of the Museum that during "the last few months" prior to May 21, 2013, the defendant had been "reviewing and working with the Goodyear Collection" as a volunteer and was frequently in "the company of a male known to [her] as Jeffrey Payne while at the museum."  Dkt. #1, Affidavit of S.A. Paris, ¶ 6.

The Museum's Library Researcher Register sign in sheets also disclosed that the defendant and Payne had visited the museum together on numerous dates for the purpose of reviewing the Goodyear Collection.  Dkt. #1, Affidavit of S.A. Paris, footnote 3.

Subsequent to her communication with Lowenherz, the Executive Director of the Museum received several voicemails from the defendant and eventually the defendant came to the Museum and met with Museum officials and told them that he had been "contacted by a dealer in New York City because [he, the defendant] was selling copies of letters" which he denied ever doing, as far as letters belonging to the Museum were concerned.  The defendant then advised that they might be contacted by this dealer.  He also stated "that the museum did not have a complete list of the inventory and could not know if something was missing."  Later that same day, "Payne" faxed a hand written letter to Lowenherz demanding that either payment be made for the letters previously sent or that they be returned to "Payne" by Fed Ex.  Similar voicemail demands were made by "Payne" to Lowenherz.  Dkt. #1, Affidavit of S.A. Paris, ¶s 6-7.

On May 22, 2013, the defendant and Jeffrey Payne[2] were observed in the Museum library section where they remained for approximately twenty minutes reviewing photographs.  Upon departing from the Museum, they were kept under surveillance by law enforcement officers who determined the residence of the defendant

---

[2] During the surveillance period, law enforcement officers determined the identity of the defendant as well as that of his companion Jeffrey Walter Payne.

to be 333 Linwood Avenue, Buffalo, New York, Apartment 507.  During this period of time, the defendant had telephonically contacted the Director of the Library and Archives of the Museum and told her "that 'a little birdie' told him that something was wrong about the building and [he] would hate to see something bad happen and for [her] to lose her job."  The defendant further indicated that all his conversations with Lowenherz were recorded and that the defendant already contacted his attorney. Dkt. #1, Affidavit of S.A. Paris, ¶s 8-9.

On May 23, 2013, the defendant was observed entering the Fed Ex store on Elmwood Avenue, Buffalo, New York and "placing what appeared to be a thick manila envelope into a Fed Ex box" for shipping purposes.  The addressee on the box was "Stuart Lutz, 877-428-9362, 784 Morris Turnpike, PMB #161, Short Hills, New Jersey 07078."  The return address on this Fed Ex box was "J.W. Payne, 716-228-4242, 3842 Harlem Road, STE 400, Buffalo, New York 14215," the same return address used by the defendant on the Fed Ex box containing historic documents sent to Lowenherz on May 18, 2013 along with the same telephone number that Lowenherz had used to call "Walter Payne" on May 13, 2013.  13-M-64, Dkt. #1, Affidavit of S.A. Paris, ¶10.

## DISCUSSION AND ANALYSIS

### A.  The Search Warrant of May 23, 2013 – Probable Cause

The defendant argues that the search warrant application of May 23,

2013 "lack[s] probable cause to believe that contraband would be recovered from the

Linwood Avenue apartment" of the defendant.  Dkt. #90, p. 3.  This argument fails for

the following reasons.

As the Court of Appeals for the Second Circuit stated:

A plaintiff who argues that a warrant was issued on less
than probable cause faces a heavy burden.  "Where [the]
circumstances are detailed, where reason for crediting the
source of the information is given, and when a magistrate
has found probable cause, the courts should not
invalidate the warrant by interpreting the affidavit in a
hypertechnical, rather than a commonsense, manner. . . .
[T]he resolution of doubtful or marginal cases in this area
should be largely determined by the preference to be
accorded to warrants."  *United States v. Ventresca*, 380
U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684
(1965).  In particular, where the officer requesting the
search warrant relies on an informant, the magistrate's
role is to examine the totality of the circumstances and to
make a practical, commonsense decision whether, given
all the circumstances set forth in the affidavit before him,
including the "veracity" and "basis of knowledge" of
persons supplying hearsay information, there is a fair
probability that contraband or evidence of a crime will be
found in a particular place.  And the duty of a reviewing
court is simply to ensure that the magistrate had a
"substantial basis for . . . conclud[ing]" that probable
cause existed.
*Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S.Ct. 2317,
2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United
States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4

L.Ed.2d 697 (1960)); *see United States v. Feliz-Cordero*,
859 F.2d 250, 252-53 (2d Cir. 1988).

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).


Prior to obtaining this search warrant, investigation by S.A. Paris established that the defendant and Jeffrey Payne had been visiting the Museum and reviewing documents in the A. Conger Goodyear Collection for a period of time prior to May 13, 2013.  S.A. Paris also established that a "Walter Payne" had contacted David Lowenherz for the purpose of selling historical documents to him and that he subsequently shipped A. Conger Goodyear original letters and a postcard as well as copies of letters to Lowenherz by Federal Express.  When Lowenherz contacted the Museum on May 21, 2013 and made inquiry about the Goodyear letter collection being offered for sale by "Walter Payne," the Museum determined that "over thirty of the forty-two listed letters/postcards" sent by Lowenherz "were missing from the Goodyear Collection" belonging to the Museum.  Dkt. #1, Affidavit of S.A. Paris, ¶ 5.  Shortly thereafter, the defendant contacted the Museum and told the Executive Director that "he had been contacted by a dealer in New York City because he was selling copies of letters" and that this dealer may be contacting the Museum.  The defendant also stated that the Museum "did not have a complete list of the [Goodyear] inventory and could not know if something was missing."  13-MJ-62, Affidavit of S.A. Paris, ¶ 6.


The Museum contacted law enforcement and advised that documents from its Goodyear Collection were missing and that there was concern about the

activities of the defendant and Jeffrey Payne in their numerous, recent visits examining the Goodyear Collection.

In determining whether probable cause existed for the issuance of a search warrant, the totality of the circumstances must be considered.  As the United States Supreme Court has stated:

> This totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific "tests" be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a "practical, nontechnical conception." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id., at 175, 69 S.Ct., at 1310.

*Illinois v. Gates*, 462 U.S. 213, 230 - 231 (1983).

The Second Circuit Court of Appeals has reiterated this concept wherein it has stated:

> Probable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." Gagnon, 373 F.3d at 236. "[T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Because the standard is fluid and contextual, a court must examine the totality of the circumstances of a given arrest."

United States v. Delossantos, 536 F.3d 155, 159 (2d
Cir.2008) (citations and internal quotation marks omitted).

*United States v. Steppello*, 664 F.3d 359, 363 - 364 (2d Cir. 2011).

Since "four original letters and one postcard" and copies of Goodyear letters had been sent by "Walter Payne" to David Lowenherz on May 18, 2013, it was reasonable for S.A. Paris to conclude that originals of the copies sent had to be stored somewhere and that in all likelihood, such location was the residence of the defendant which had been determined to be 333 Linwood Avenue, Apartment 507. Further, it was established that the defendant and Jeffrey Payne had been reviewing the Goodyear collection at the Museum on numerous occasions prior to May 23, 2013 and that as of May 21, 2013, the Museum established that "over thirty of the forty-two listed letters/postcards" sent by Lowenherz were missing from its Goodyear Collection. Once again, it was reasonable for S.A. Paris to believe that the missing originals belonging to the Museum were in the custody of the defendant and being stored at his residence after making copies which were sent to Lowenherz on May 18, 2013.

The totality of the facts and circumstances presented to this Court, as set forth in the affidavit of S.A. Paris sworn to May 23, 2013, were certainly sufficient to conclude, based on "considerations of everyday life," that in all probability, the defendant had removed original letters from the Museum's Goodyear Collection and had them secreted in his residence. As a result, there was legal probable cause justifying the issuance of the search warrant on May 23, 2013 authorizing the search of the defendant's residence.

**B.  The Search Warrant of May 23, 2013 – Good Faith**

The defendant argues that the "good faith" exception established by the

United States Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984) cannot be

applied to the search warrant of May 23, 2013.  Dkt. #90, p. 6.  The defendant asserts

that a "well trained investigative agent would have known that this application [of

May 23, 2013] was not based on probable cause" and that it was based "almost entirely

on speculation."  Dkt. #90, p. 6.  This argument of the defendant is rejected.

In *Leon*, the Supreme Court held that when an agent obtains evidence by

way of good faith reliance on a facially valid warrant, such evidence does not have to be

suppressed even though the warrant in question is later found to lack probable cause.

*Id.* at 920.  As the court stated:

> In the absence of an allegation that the magistrate
> abandoned his detached and neutral role, suppression is
> appropriate only if the officers were dishonest or reckless in
> preparing their affidavit or could not have harbored an
> objectively reasonable belief in the existence of probable
> cause.

*Id.* at 926.

The defendant has not presented anything other than the conclusory

statement that "it was not objectively reasonable [for S.A. Paris] to rely upon the

information contained in the search warrant application as establishing probable cause"

and therefore, she as a "well trained investigative agent would have known that this

application was not based on probable cause" and that it consisted "almost entirely of

speculation."  Dkt. #90, p. 6.


The burden of determining whether probable cause had been established

so as to authorize the issuance of the search warrant rested with this Court and not S.A.

Paris.  As the Supreme Court stated in *Leon*:

> It is the magistrate's responsibility to determine whether the
> officer's allegations establish probable cause and, if so, to
> issue a warrant comporting in form and with the
> requirements of the Fourth Amendment.  In the ordinary
> case, an officer cannot be expected to question the
> magistrate's probable cause determination or his judgment
> that the form of the warrant is technically sufficient.  "[O]nce
> the warrant issues, there is literally nothing more the
> policeman can do in seeking to comply with the law."
> (citation omitted).  Penalizing the officer for the magistrate's
> error, rather than his own, cannot logically contribute to the
> deterrence of Fourth Amendment violations.

*Leon*, 468 U.S. at 918, 921.


Since I found the sworn statements of S.A. Paris in her affidavit to be

sufficient to establish probable cause, the agents had every right to execute that warrant

in good faith.  Therefore, there is no requirement to apply the exclusionary rule.  As the

Second Circuit Court of Appeals has ruled, "[t]he exclusionary rule operates to deter

illegal searches by police, not as a personal constitutional right of the aggrieved party.

Therefore, 'suppression is our last resort, not our first impulse.'  *United States v. Clark*,

638 F.3d 89, 99 (2d Cir. 2011) (quoting *Herring v. United States*, 555 U.S. 135, 140,

129 S. Ct. 695, 172 L.Ed.2d 496 (2009)."  *United States v. Richard,* 534 Fed. Appx. 35,

37 (2d Cir. 2013).

### C.  The Search Warrant of May 24, 2013

The defendant argues that the search warrant of May 24, 2013 authorizing

the seizure and search of a Fed Ex box should not have been issued "because of a lack

of probable cause."  Dkt. #90, p. 2.  The defendant also argues that the good faith

doctrine under *Leon* should not apply to this warrant.  Dkt. #90, p. 2.

The reasoning stated by this Court on the issues of probable cause and

good faith under *United States v. Leon*, 468 U.S. 897 (1984) in its discussion of the

validity of the May 23, 2013 search warrant, applies equally to the May 24, 2013 search

warrant and is incorporated by reference in rejecting the defendant's arguments as to

the May 24, 2013 search warrant.

The defendant erroneously claims that "it appears from the Paris affidavit

that the museum, prior to May 24, 2013, had accounted for the documents claimed to

have been removed" and that "the government had secured the documents sent to

David Lowenherz and it also recovered the documents located in Defendant's

apartment."  Dkt. #90, p. 5.

The affidavit of S.A. Paris sworn to May 24, 2013 and submitted to this

Court in support of her application for the May 24, 2013 search warrant seeking

authorization to seize and search the Fed Ex box described therein clearly states that "Walter Payne" "faxed Lowenherz numerous **copies** of historical letters/post cards written to Anson Conger Goodyear and others."  13-M-64, Dkt. #1, p. 4, ¶ 5. On May 18, 2013, "Payne" sent to Lowenherz "via Fed Ex Overnight Service, four original letters and one postcard, **photocopies** of original letters and a handwritten letter discussing the terms of the exchange.  13-M-64, p. 5, ¶ 5.

On the morning of May 21, 2013, Lowenherz sent an e-mail containing a "compiled **list** of approximately forty-two letters/postcards offered by Payne" for sale to Lowenherz to the Director of the Library and Archives of the Museum for the purpose of determining whether such items being offered for sale were "legitimate."  This inquiry immediately caused the Museum to conduct an inventory of its A. Conger Goodyear Collection.  It was determined by the Museum prior to the issuance of the May 23, 2013 search warrant that "over thirty of the forty-two **listed** letters/postcards were missing from the Goodyear Collection" belonging to the Museum.  13-M-64, Dkt. #1, p. 5, ¶ 6.

Investigation by S.A. Paris had established that the defendant and Jeffrey Payne utilized the Fed Ex Overnight Service for shipping documents to a potential buyer of such documents as was done with Lowenherz on May 18, 2013.  The defendant was observed on May 23, 2013 entering the Fed Ex office on Elmwood Avenue, Buffalo, New York and "placing what appeared to be a thick manila envelope into a Fed Ex box and shipping the package."  After securing this Fed Ex box, the agents were able to view the exterior of the box and learn that the addressee on the box was Stuart Lutz,

877-428-9362, 784 Morris Turnpike, PMB #161, Shorthills, N.J. 07078." This was the same Stuart Lutz who had been recommended to "Walter Payne" by David Homes regarding the same of historic documents. The return address on the exterior of the Fed Ex box was "J.W. Payne, 716-228-4242, 3842 Harlem Road, STE 400, Buffalo, New York 14215" which was the same return address and telephone number that appeared on the Fed Ex box sent to Lowenherz on May 18, 2013. 13-M-64, pp. 4, 8-9, ¶s 4, 10.

At this point in time, no other documents had been recovered by the agents from Lowenherz; nor had the Museum found the missing "thirty" or more letters/postcards missing from its Goodyear Collection. Therefore, it was reasonable for the agents to believe that there was probable cause to believe that the Fed Ex box containing the thick manila envelope, addressed to Stuart Lutz, contained documents taken from the Museum by the defendant. This history was properly provided to this Court in the affidavit of S.A. Paris in support of the application for a search warrant authorizing a seizure and search of the Fed Ex box addressed to Stuart Lutz and considered by this Court in its totality in making its decision that probable cause existed thereby justifying the issuance of the search warrant of May 24, 2013.

## CONCLUSION

Based on the foregoing, it is hereby recommended that defendant's motion to suppress the use of evidence at trial seized pursuant to the search warrants of May 23 and 24, 2013 be in all respects denied.

14

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with Fed. R. Crim. P. 59(a).

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).  **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(1) of the Local Rules for the Western District of New York, written objections shall specifically identify the portions of the Report, Recommendation and Order to which the party objects and the basis for such objection, and shall be supported by legal authority.  **Failure to**

**comply with the provisions of Local Rule 59(b)(1), may result in the District Judge's refusal to consider the objection.**

In accordance with the requirements set forth in Local Rule 59(b)(3), "[a]ny party filing objections to a Magistrate Judge's order or recommended disposition must include with the objections to the District Judge a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge." **Failure to comply with the provisions of Local Rule 59(b)(3), may result in the District Judge's refusal to consider the objection.**

Dated:      Buffalo, New York
            February 1, 2016

*S/ H. Kenneth Schroeder, Jr.*
**H. Kenneth Schroeder, Jr.**
**United States Magistrate Judge**